1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BG SHOP LLC et al.,<br><br>                         Plaintiffs,<br><br>        v.<br><br>MASON COUNTY PORT DISTRICT NO. 216,<br><br>                         Defendant. | CASE NO. C23-5350-KKE<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

Plaintiffs BG Shop LLC and Marlo Brown (collectively "Plaintiffs") brought this civil rights action against Defendant Mason County Port District No. 216 ("Port") because the Port rejected their application for a lease. After Plaintiffs failed to prosecute the case in any meaningful way, the Port filed this motion for summary judgment seeking a full dismissal. The Port argues Plaintiffs lack standing to raise their claims, are not members of a protected class, fail to provide evidence of any individual discrimination, and fail to identify a due process right that has been violated. In opposition, Plaintiffs submitted a self-serving declaration that both fails to rebut the Port's arguments and also contains factual errors and internal inconsistencies. Based on this record, and Plaintiffs' failure to meet the legal standard for any of its claims, the Court grants the Port's motion for summary judgment and dismisses the case.

## I.   BACKGROUND

In February 2000, the Port entered a land lease with R. Williams Enterprises ("Williams") for approximately two acres of Port property.  Dkt. No. 27-1 at 2–26.  During that lease, and with the Port's permission, Williams constructed two warehouses on the property.  *Id.* at 28.  On December 7, 2021, the Port entered a Purchase and Sale Agreement ("PSA") with Williams to buy the warehouses and to end the land lease, returning full ownership of the property and warehouses to the Port.  *Id.* at 52–61.  The PSA required Williams to terminate all leases with the current tenants of the warehouse structures.  *Id.* at 57.  Plaintiffs had entered an improper sublease with a lessee of Williams (*id.* at 30–35, 37–50), and were notified their lease would terminate on December 31, 2021.  *Id.* at 68–70.  In response to Plaintiffs' request (*id.* at 72), the Port and Plaintiffs entered a short-term lease for the term January 3, 2022, to March 31, 2022, "with no extensions."  *Id.* at 77.

On December 17, 2021, Plaintiffs submitted a partially complete application for a long-term lease.  Dkt. No. 27-1 at 110–16.  After requesting additional documents (*id.* at 118), and discussing the application at the December 21, 2021 Board of Port Commissioners meeting (*id.* at 93), the Port rejected the application on January 11, 2022.  *Id.* at 63–66.

Around December 2021,[1] Plaintiffs allege they "filed complaints with the attorney general's office … along with complaints to State representatives."  Dkt. No. 29-1 ¶ 4.  The Port denies receiving notification of any such complaints during this time.  Dkt. No. 32 ¶ 4.

---

[1] In her declaration, Ms. Brown states she made these complaints "on or about December 2021" but also "[a]fter the Port had issued its letter of Jan. 11, 2022."  Dkt. No. 29-1 ¶ 4.  In the complaint, Plaintiffs allege these complaints were made December 10, 2021, and included allegations "that [the] business was being unlawfully evicted by a government entity."  Dkt. No. 1 at 2 (referring to an "Ex. 4" that was never filed).

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 2

At the March 1, 2022 Board of Port Commissioners meeting, Plaintiffs orally requested the Commissioners reconsider the prior lease rejection.  Dkt. No. 33 (audio recording of the meeting).  The Commissioners voted to uphold the prior denial.  *See id.*

On April 20, 2023, Plaintiffs filed this 42 U.S.C. § 1983 case against the Port alleging two constitutional violations.  Dkt. No. 1.  First, Plaintiffs allege an equal protection violation based on unlawful discrimination against a member of a protected class because BG Shop was the only female-owned business, and the Port had no sufficient government interest "to justify the differential and disparate treatment of Plaintiffs."  *Id.* at 5.  Second, Plaintiffs allege a due process violation because "Defendants violated Plaintiffs' Constitutional rights to free speech" when "Defendants terminated Plaintiff[s'] lease in substantial part because Ms. Brown dared to speak out at a public hearing about the discrimination that she felt she and her business were experiencing at the hands of the Port."  *Id.* at 6.

The Port now moves for summary judgment dismissing the case because Plaintiffs lack standing, and each claim fails on the merits.  Dkt. No. 26.

## II.   ANALYSIS

### A.   Legal Standard for Summary Judgment

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The Court does not make credibility determinations or weigh the evidence at this stage.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  The sole inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Id.* at 251–52.  And to the extent that the Court resolves factual issues in favor of the nonmoving party, this is true "only in the sense

that, where the facts specifically averred by that party contradict facts specifically averred by the movant, the motion must be denied." *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990).

The Court will, however, enter summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Once the moving party has carried its burden under Rule 56, "the nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (cleaned up). Metaphysical doubt is insufficient (*id.* at 586), as are conclusory, non-specific allegations (*Lujan*, 497 U.S. at 888–89).

**B.    Plaintiffs Have Standing to Bring Claims for Civil Rights Violations.**

The Port argues Plaintiffs lack standing for two reasons: 1) the Port was not a party to Plaintiffs' improper sublease that was terminated when the Port bought the warehouse; and 2) the Port rejected Plaintiffs' long-term lease application before Plaintiffs complained at the March Board of Port Commissioners meeting, so Plaintiffs' alleged First Amendment activity at that meeting could not have caused its claimed injury. Dkt. No. 26 at 9–12, Dkt. No. 30 at 5. Plaintiffs respond that they have a "liberty interest in protesting government action." Dkt. No. 29 at 5. Neither party correctly analyzes the federal standing requirements, instead each party jumps to arguments on the merits under the guise of standing.

To establish constitutional standing, a plaintiff must show it has suffered an "injury in fact," that the injury is "fairly traceable" to the conduct at issue in the plaintiff's claim, and that "it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc*., 528 U.S. 167, 180–81 (2000). "'[A]t the summary judgment stage, a plaintiff must offer evidence and specific facts

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

demonstrating each element' of Article III standing."  *Jones v. L.A. Cent. Plaza LLC*, 74 F.4th 1053, 1058 (9th Cir. 2023) (quoting *Ctr. for Biological Diversity v. Exp.-Imp. Bank*, 894 F.3d 1005, 1012 (9th Cir. 2018)).

Plaintiffs have suffered injury-in-fact by the loss of their lease, either through termination, non-renewal, non-extension, or rejection of their lease application.  Although it is true the Port did not enter into or terminate Plaintiffs' original sublease with Williams, the Port did reject Plaintiffs' application for a long-term lease and refuse to extend the short-term three-month lease.  The Port's reversal of either decision would arguably redress the injury Plaintiffs assert.  Thus, Plaintiffs have established the requisite injury, causation, and redressability sufficient to show standing to bring their claims.

**C.      Plaintiffs' Equal Protection Claim Fails.**

Plaintiffs asserted an equal protection claim based on the Port's alleged discrimination against them as the only female-owned business among the tenants of the warehouse.  Dkt. No. 1 at 5.  But in opposition to summary judgment, Plaintiffs withdrew the claim of equal protection based on gender discrimination and proffered the theory that by refusing to extend or offer a lease to Plaintiffs, the Port violated the equal protection clause of the Fourteenth Amendment based on "individual discrimination."  Dkt. No. 29 at 6.

The Supreme Court has recognized a "class of one" cause of action for plaintiffs alleging they have been "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  The bar for showing substantial similarity is extremely high and "must be enforced with particular rigor in the land-use context because [such] decisions 'will often, perhaps almost always, treat one landowner differently from another.'"  *Cordi-Allen v. Conlon*, 494 F.3d 245, 251 (1st Cir. 2007) (quoting *Olech*, 528 U.S. at 565 (Breyer, J., concurring)).  Thus, "to succeed on its

'class of one' claim, [Plaintiffs] must allege that the [Port]: (1) intentionally (2) treated [Plaintiffs] differently than other similarly situated property owners (3) without a rational basis." *Bldg. 11 Invs. LLC v. City of Seattle*, 912 F. Supp. 2d 972, 983 (W.D. Wash. 2012) (citing *Olech*, 528 U.S. at 564; *N. Pacifica LLC v. City of Pacifica*, 526 F.3d 478, 486 (9th Cir. 2008)).

Here Plaintiffs offer no allegations or evidence of similarly situated property owners. Plaintiffs' failure to identify any similarly situated property owners dooms their equal protection "class of one" theory. *See Bonta, LLC v. City of Marysville*, No. 2:18-CV-01544-BJR, 2019 WL 6034956, at *5–6 (W.D. Wash. Nov. 14, 2019) (finding properties were not similarly situated even when comparator properties were identified and described).

Plaintiffs' equal protection claim is therefore dismissed.

**D.    Plaintiffs' Due Process Claim Fails.**

Plaintiffs claim their due process rights were violated by the Port when it "terminated Plaintiff[s'] lease" due to their protected free speech.  Dkt. No. 1 at 6.

Under either a substantive or procedural due process claim, Plaintiffs "must first demonstrate that [they were] deprived of a constitutionally protected property interest." *Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1019 (9th Cir. 2011).  In their complaint, Plaintiffs allege the interest that was violated was their interest in maintaining their lease (Dkt. No. 1 at 6), but in their opposition to the Port's summary judgment motion, Plaintiffs pivot and assert "Plaintiff[s'] protected 1st-Amendment right to free speech against government action (without retaliation for the same) constitutes a protected Due Process liberty interest" (Dkt. No. 29 at 6).  Both theories fail.

First, Plaintiffs cannot show they have a due process right to the lease or occupation of the Port's warehouse.  To evidence such a right, BG Shop must

'have more than an abstract need or desire for [the benefit]. [Plaintiffs] must have more than a unilateral expectation of it. [Plaintiffs] must, instead have a legitimate claim of *entitlement* to it.' Furthermore, a property interest must 'stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.'

*Gerhart*, 637 F.3d at 1019 (quoting *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972)). Plaintiffs have not shown an entitlement to a long- or short-term lease with the Port such that their due process rights are implicated.

Second, Plaintiffs' new argument that their First Amendment rights are the basis for the due process claim fails because Plaintiffs cannot assert a due process claim based on the same conduct that supports a First Amendment claim. As one court in this district recently explained, "plaintiffs cannot 'double up' on constitutional claims." *Dodge v. Evergreen Sch. Dist.*, 513 F. Supp. 3d 1286, 1297–98 (W.D. Wash. 2021) ("If 'a particular Amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing these claims.'" (quoting *Albright v. Oliver*, 510 U.S. 266, 273 (1994))).

In sum, Plaintiffs' due process claim fails for lack of a constitutionally protected interest and is therefore dismissed.

**E.    Plaintiffs' First Amendment Claim Fails.**

Even though Plaintiffs did not allege a First Amendment claim explicitly in the complaint (*see* Dkt. No. 1), because Plaintiffs tried to couch their due process claim as based on their right to free speech, the Court will nonetheless evaluate the First Amendment claim on the merits. The requirements for a First Amendment retaliation claim are: "(1) [Plaintiffs] engaged in a constitutionally protected activity, (2) Defendants' actions would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the protected activity was a substantial or motivating factor in Defendants' conduct." *Sampson v. Cnty. of Los Angeles by &*

*through Los Angeles Cnty. Dep't of Child. & Fam. Servs.*, 974 F.3d 1012, 1019 (9th Cir. 2020). "To survive summary judgment, a plaintiff alleging a First Amendment retaliation claim must produce evidence that the governmental actor had knowledge of his protected speech." *Occhionero v. City of Fresno*, 386 F. App'x 745, 745–46 (9th Cir. 2010).

Here, there is no unrebutted evidence that Plaintiffs' alleged constitutionally protected activity could have been the basis for the Port's denial of the lease application. Even assuming Plaintiffs filed complaints "with the attorney general's office … along with complaints to State representatives" (Dkt. No. 29-1 ¶ 4), Plaintiffs do not provide any evidence that any decisionmaker at the Port knew about these complaints. Plaintiffs provide only the self-serving declaration of Ms. Brown, in which she asserts that at the March 1, 2022 Board of Port Commissioners meeting, "Commissioner Patterson expressed outrage at me for having dared to file a complaint with the Attorney General's Office" and that "Commissioner Patterson explicitly stated that she would be voting against awarding BG Shop a long-term lease *because* I had complained to the Attorney General about the Port's conduct." Dkt. No. 29-1 at 2. In support of its reply brief, the Port provided the audio recording of the March 1, 2022 meeting. Dkt. No. 33. The Court's review of this recording reveals that Commissioner Patterson never uttered any of the phrases or sentiments alleged by Plaintiffs in the Brown declaration. *Id.* To the contrary, during the meeting, neither party mentions any complaints made by Plaintiffs against the Port. The Port also submitted unrebutted declaration testimony that expressly disavowed any knowledge of such complaints. Dkt. No. 32 ¶ 4.

Along with Plaintiffs' failure to evidence the Port's knowledge of any constitutionally protected activity, the Port's January 11, 2022 letter denying Plaintiffs' lease application explains the many legitimate reasons for the decision. Dkt. No. 27-1 at 63–66. The letter noted both the nature of Plaintiffs' business, Plaintiffs' failure to provide the complete required documentation

with their long-term lease application, and many financial and regulatory concerns with the business based on the documents Plaintiffs submitted. *Id.* In their opposition brief, Plaintiffs do not rebut the Port's evidence, nor offer any evidence or argument that the Port's stated reasons for denying the long-term lease application were untrue.[2]

There is no evidence that Plaintiffs engaged in any protected speech, or that even if they did, the Port knew anything about it. There is also no evidence that even had such speech occurred and the Port knew of it, that such speech caused the Port to reject Plaintiffs' lease application. Plaintiffs' First Amendment claim thus fails at every step.

For these reasons, to the extent Plaintiffs attempt to bring a First Amendment claim, it is dismissed.

### III. CONCLUSION

For these reasons, the Court GRANTS Defendant's motion for summary judgment and dismisses the case with prejudice. Dkt. No. 26.

Dated this 30th day of July, 2024.

Kymberly K. Evanson
United States District Judge

---

[2] Throughout this litigation, Plaintiffs' counsel, Mr. Eric Helmy, repeatedly failed to comply with this Court's orders and the Federal Rules of Civil Procedure. Mr. Helmy did not file a corporate disclosure statement, provide initial disclosures, participate in the Court's required joint status report process, respond to the Port's Requests for Admission, or serve discovery. Based on this concerning pattern, the Court ordered a status conference in which Mr. Helmy assured the Court there was no need to change the case schedule. *See* Dkt. Nos. 19, 20. Mr. Helmy then sought to extend the discovery deadline, but failed to show good cause and the motion was denied. Dkt. No. 21, Dkt. No. 25. Mr. Helmy requested oral argument on the Port's motion for summary judgment but failed to appear for the hearing without explanation or follow-up. *See* Dkt. Nos. 28, 34. While Plaintiffs' claims fail on their merits, their cause was not aided by their lawyer. The Court expects counsel to comply with all Court rules and orders and admonishes Mr. Helmy that such conduct will not be tolerated in future cases.

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9